OPINION OF THE COURT
Ira Gammerman, J.
In this action to recover damages for personal injuries, the jury awarded $75,000 to the injured plaintiff and $25,000 to her spouse. Defendants, the owner and managing agent of the building in which plaintiffs resided at the time of the injury, move to set aside both verdicts and to dismiss the complaints based on plaintiff’s alleged failure to prove a prima facie case. Defendants also move to set aside the verdict in the derivative action as excessive.
This is one of a growing number of cases in which a tenant (or building occupant) sues the building owner (or manager) to recover for injuries resulting from a criminal attack. Here plaintiff Minnie Dick was seriously injured by three unidentified robbers who entered the lobby of the building in which she lived through an unsecured front door. There was ample proof that the front door lock was in disrepair for at least a year prior to the robbery and assault and that repeated requests for repairs were ignored. Nor can there be any dispute that it was through this very door that plaintiff Minnie Dick’s assailants entered the building. *687 The jury could (and did) properly conclude that the defective door lock was a proximate cause of the attack. Defendant’s argument that a working lock may have delayed the entry of the attackers but could not have prevented it is without merit, particularly in view of the facts of this case. Plaintiff Minnie Dick was assaulted and robbed as she was about to enter the elevator. Had her attackers been delayed, even for a short period of time, she would have been able to enter that elevator, alone and safe, and proceed to her apartment unmolested. Certainly if a jury could find that the failure to maintain illumination in a parking lot was the proximate cause of an assault (Loeser v Nathan Hale Gardens, 73 AD2d 187), it could find a causal relationship between a defective lock and an assault under the circumstances of this case.
Defendants argue, however, that as a matter of law, the failure of plaintiffs to prove prior criminal activities in the area precludes the jury from finding the attack on plaintiff Minnie Dick to be a reasonable, foreseeable consequence of the failure to provide a secure and working front door lock. In all of the cited cases in which a landlord or manager was held liable for the criminal acts of an unknown third party, some proof was offered regarding either prior criminal activity in the area, or the deterrent effect of locks, lights or other security devices. (See Sherman v Concourse Realty Corp., 47 AD2d 134; Nalian v Helmsley-Spear, Inc., 50 NY2d 507; and Loeser v Nathan Hale Gardens, supra.) The failure to offer such proof is, however, in the view of the court, not fatal to plaintiff’s cause of action.
In light of the rising crime rate in this city, and the fact that muggings, robberies and homicides have occurred in all neighborhoods, a causal relationship between a defective door lock and violent criminal activity can be determined by a jury from its common experience. (Indeed during the voir dire of criminal jury panels, the question “Have any of you been the victim of a crime?” frequently elicits a positive response from a majority of the prospective jurors, drawn from all walks of life and many divergent neighborhoods. )
It cannot be argued here that defendants’ failure to repair the door lock was reasonable in proportion to the poten *688 tial danger to their tenants. The necessary, reasonable precautions did not involve any costly safeguards like closed-circuit television or an armed security force. The cost of repair of the door lock (not a bell and buzzer intercom) entails a most modest expense.
It was for the jury to weigh the probability of the harm to plaintiff and the gravity of that harm against the cost or burden imposed by the required precaution. Here the jury did so and found defendants negligent. That finding should not be disturbed.
On the issue of excessiveness, the jury award to plaintiff Minnie Dick of $75,000 was clearly supported by the evidence. Her injuries were severe and permanent. No claim is made that the award to her was excessive. Defendant argues, however, that the award of $25,000 to her husband was excessive.
Although no proof was offered as to his age, Allen Dick, from his appearance, is evidently a man in his 70’s (Minnie Dick is 71 years old). Prior to the attack on Mrs. Dick, the Dicks shared an active professional, social and home life. (They practiced law together.) Their joint activities were curtailed only by Allen Dick’s health problems. Although not clearly specified, he obviously suffers from a chronic hip problem which has required repeated hospitalizations and multiple surgery. Indeed, Minnie Dick was returning home from a hospital visit to her husband the day she was attacked. The jury was free to conclude that during the years of their marriage, the Dicks had developed a close relationship of interdependence which will continue for the remaining years of their lives together. Allen Dick was entitled to expect that his wife would be able to care for him at home during the periods of his intermittent disability and would be able to share with him those social activities of which he was capable. The negligence of defendants has deprived him of his wife’s nursing, cooking, and housekeeping services. Her activities and ability to ambulate are limited by the permanent sciatic nerve injury she suffered. To assess the loss he has sustained during the almost five years since his wife’s injury, and the loss he will suffer for an admittedly undetermined period in the future, is *689 one that is particularly best left to the collective intelligence of a jury. Although the court may not have calculated his damages as one third .of his wife’s, an award of $25,000 for his derivative losses is not shocking to the conscience (Coleman v Southwick, 9 Johns 45). Awards in other cases, although interesting, are not particularly helpful. Based on the record here and the court’s evaluation of the plaintiffs and their relationship, the award to Allen Dick is not excessive and will be permitted to stand.