## SCHINDLER v METROPOLITAN DADE COUNTY
### Case No. 85-16928 SP05
County Court, Dade County

February 21, 1986

### APPEARANCES OF COUNSEL

**Thomas M. Pflaum** for plaintiff.

**Robert A. Ginsburg,** County Attorney, and **Thomas W. Logue,** Assistant County Attorney, for defendant.

### OPINION OF THE COURT

CHARLES D. EDELSTEIN, County Judge.

Plaintiff, the owner and landlord of a small single family residence seeks compensation from Metro Dade County for damages to the residence caused in part by County police in the execution of a valid search warrant for drugs and in part by vandals who gutted the interior of the premises after the police exited.

The legislature in enacting a comprehensive scheme regulating the sale of narcotics has unquestionably demonstrated a strong public policy in favor of controlling and eradicating the illicit sale and consumption of certain drugs. The executive branch, in the form of Metropolitan Police Department, has the duty to implement this broad

public policy. The selection of and deployment of its' personnel to achieve these goals are themselves policy decisions made at the highest levels of law enforcement. While the government has waived its' blanket immunity from suit for the tortious acts of its employees that waiver does not extend to "policy level decisions" and is limited to "operational acts and omissions." See e.g. *Commercial Carrier Corp. v. Indian River County*, 371 So.2d 1010 (Fla. 1979).

The courts must refrain from unduly interfering with policy decisions made by the other branches of government. These decisions may be measured against constitutional limitations but not against the court's view of the wisdom of the policy decision. In a government founded upon the separation of powers, courts must, in doubtful cases, classify a decision as policy, rather than operational.

In the case at bar, the decision to conduct the search might be classified as a policy decision, but clearly the manner in which the search was executed was operational. Cf. *Palmer v. City of Daytona Beach*, 443 So.2d 371 (Fla. 5th DCA 1983). Operational decisions are measured by traditional tort concepts. The degree of force used to gain entry to the premises was both reasonable and necessary. The police had reliable information that the premises contained illicit drugs which were being guarded by persons armed and presently dangerous. The damage caused to the premises was unquestionably appropriate.

Moreover the officers' actions come within the doctrine of public necessity. The County relief upon the classic statement of this doctrine by Dean Prosser:

> Where the danger affects the entire community, or so many people that the public interest is involved, that interest serves as a complete justification to the Defendant who acts to avert peril to all. Thus one who dynamites a house to stop the spread of a conflagration that threatens a town, or shoots a mad dog in the street, or burns clothing infected with small pox germs, or, in time of war, destroys property which should not be allowed to fall into the hands of the enemy, is not liable to the owner so long as the emergency is great enough, and he has acted reasonably under the circumstances. The "champion of the public" is not required to pay out of his own pocket for the general salvation.

W. Prosser, *The Law of Torts* (4th Ed.) at 125-126.

The police caused $1000.00 worth of damages to the premises in executing the search warrant. Based upon the above, the County is not liable for those damages. As to the balance, ($1,023.00) a different result is warranted.

The actions of the officers after the search are also operational as opposed by policy and are to be measured by time honored tort rules. The test to be applied here is:

1. What is the likelihood of harm occurring by the acts or omissions of the tort feasor. Cf. *K. Mart Enterprises of Florida, Inc. v. Keller2rf, 439 So.2d 283 (Fla. 3d DCA 1983).*

2. What is the gravity or severity of the harm that might occur.

3. What are the costs of preventing the occurrence of the harm.

The records clearly show a high likelihood of the harm since the premises are located in a poverty stricken, high crime area where burglaries are common. The police failed to either secure the premises or to notify the plaintiff to provide him an opportunity to secure the premises. There was, in effect, an open invitation to prospective burglars to vandalize the premises.

The record also established high likelihood that the loss would be extensive. The vandals would have ample opportunity to gut the premises which in fact they did. It was unlikely that neighbors would intervene personally or by notifying the owner or the police.

Finally, the actions that could have been taken to either secure the premises or notify the owner were not unduly costly or burdensome. Plaintiff is record owner of the property and could have been notified easily. The premises could have been secured by County employees, possibly at the Plaintiff's expense. The policy cannot assemble a S.W.A.T. team, break into a private residence and simply abandon it to be ravaged. While government has the right under the public necessity doctrine to destroy private property, the citizens' right to the enjoyment of private property cannot be abridged by the indifference of government.

For the reasons set forth, Final Judgment is hereby entered against the Defendant for $1023.00, plus the costs of this action against $50.00. Execution is withheld for 90 days from the date of this order to allow the defendant an opportunity to seek review of this order.

The court will consider, upon motion, the certification of this order as one of great public interest. See Rule 9.160 of the Rules of Appellate Procedure.

**Note:** Liability has even been extended to the negligent failure to provide protection to crime victims. See *Sorichetti v. City of New York*, tells the Police the Liability Looms for failure to respond to domestic violence situations, 40 University of Miami Law Review 333, (November 1985).